ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Molly Jessie Company | ) ASBCA No. 62134 |
| | ) |
| Under Contract No. FA440719PA002 | ) |

APPEARANCE FOR THE APPELLANT:  Mr. Greg Ryan
    Principal

APPEARANCES FOR THE GOVERNMENT:  Jeffrey P. Hildebrant, Esq.
    Air Force Deputy Chief Trial Attorney
    Lawrence M. Anderson, Esq.
    Lt Col Scott A. Van Schoyck, USAF
    Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE SHACKLEFORD

This is an appeal from a final decision terminating the subject contract for cause. The appellant has elected Board Rule 12.3, Accelerated Procedure, and the parties have agreed to a record submission under Board Rule 11. Each party filed an initial brief. Appellant filed a reply brief and the government answered that reply. In addition to the briefs, the record includes the government's Rule 4 file (R4, tabs 1-74), two documents submitted by appellant with its initial brief (exs. A-1, -2) and an affidavit from Mr. Ryan. Also included are several photographs from the government's Rule 4 file upon which appellant has added commentary. Only the propriety of the termination for cause is before us.

FINDINGS OF FACT

1. On February 27, 2019, the Air Force, on behalf of Cardinal Creek Golf Course (government) awarded Contract No. FA440719PA002 (contract) to Molly Jessie Company (appellant or MJC) to perform three line items of work. Item No. 001 was to perform tree removal, root pruning and canopy pruning in accordance with the contract's Statement of Work (SOW) in the amount of $17,100. (R4, tab 3 at 4-5)

2. Item No. 0002 was to perform Option No. 2, remove all trees behind the third tee including driving range side of fence – hole # 3 in accordance with the SOW for the amount of $1,700. Item No. 0003 was to perform Option No. 3, Remove 3 Cotton Wood Trees behind the 15th green and other work near holes 5, 6, 7, 11, 14 and 15 for the amount of $2,500. (R4, tab 3 at 4-5)

3. The period of performance set forth in the contract was February 20, 2019 to March 20, 2019 for Item Nos. 1, 2 and 3 (R4, tab 3 at 10).

4. The contract included Paragraph 13, Termination for Cause, which provided:

> a. The NAFI may, subject to paragraphs c. and d. below, by written notice of cause to the Contractor, terminate this contract in whole or in part if the Contractor fails to-
>
> (1) Deliver the supplies or perform the service within the time specified within this contract or any extension;
> (2) Make progress, so as to endanger performance of this contract (however, see paragraph b. below); or
> (3) Perform any of the other provisions of this contract (however see paragraph b. below).
>
> b. The NAFI's right to terminate this contract under paragraph a. 2. and a. 3. above, may be exercised if the Contractor does not cure such failure within 10 days (or more if authorized in writing by the Contracting Officer) after receipt of notice from the Contracting Officer specifying the failure.
>
> c. If the NAFI terminates this contract in whole or in part, it may acquire, under the terms and in the manner the Contracting Officer considers appropriate, supplies or services similar to those terminated, and the Contractor will remain liable to the NAFI for any excess costs for those supplies or services. However the Contractor must continue the work not terminated.
>
> d. . . . The Contractor shall not be liable for any excess costs if the failure to perform the contract arises from causes beyond the control and without the fault or negligence of the Contractor. Examples of such causes include:
> (1) Acts of God or of the public enemy
> (2) Act of the NAFI in either its sovereign or contractual capacity
> (3) Fires
> (4) Floods
> (5) Epidemics
> (6) Quarantine restrictions

(7) Strikes

(8) Freight embargoes

(9) Unusually severe weather

. . .

g. If, after termination, it is determined that the cause by the Contractor was excusable, the rights and obligations of the parties shall be the same as if the termination had been issued for convenience of the NAFI.

h. The rights and remedies of the NAFI in this clause are in addition to any other rights and remedies provided by law or under this contract.

(R4, tab 3 at 15-16)

5. The contract also included paragraph 3, Claims, which provided in part:

b. "Claims," as used in this clause, means the inability of a Contractor and the Contracting Officer to reach a mutual agreement related to contractual issues in controversy resulting in the filing of a written demand or assertion seeking payment of money, adjustment or interpretation of contract, or other relief, and issuance of a Contracting Officer's final decision....

. . .

e. The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the Contracting Officer.

(R4, tab 3 at 13-14)

6. The SOW included the following:

Work should be performed when the soil is firm enough to support any equipment used in the execution of this work.

3

Any turf damage (i.e. tire ruts) are the responsibility of the contractor to repair back to same or improved condition.

(R4, tab 3 at 5)

7. Appellant's employees arrived on site on or around March 6, 2019 (R4, tab 6 at 3). From that point forward, some work was performed and the government made one or more partial payments to appellant, but the work was not completed by the March 20, 2019 contract due date. Thus the parties had discussions (*e.g.*, R4, tab 12, tab 23 at 1), and on April 25, 2019, bilateral contract modification P00001 was issued extending the period of performance to June 30, 2019, providing as follows:

The purpose of this modification is for the following:

A. Cancel any previous requested modifications . . . by the Government

B. Change the completion date from 20 March 2019 to an estimated completion date of 30 June 2019. Any additional delays for weather will be coordinated, approved, and agreed to between Molly Jessie and the Government.

C. Partial Payments will be authorized.

D. Contract price be increased by $1,700.00 for remobilization and the contract price is increased from $21,300.00 to $23,000.00 for this modification.

E. All other terms and conditions remain unchanged. In consideration of the modification agreed to herein as complete equitable adjustment for time and cost associated. The contractor hereby releases the Government from any and all liability under this modification for further equitable adjustments.

(R4, tab 39 at 3) Bilateral contract modification P00001 also established a contract completion date for each line item of June 30, 2019, none of which included the modifier "estimated."

8. Thereafter, on or about May 13, 2019, appellant's crews resumed tree removal, root pruning and canopy pruning at the golf course (R4, tab 42 at 2). For May 14, 2019, appellant reported that they had completed seven stump grindings, but that due to ground conditions they could make only limited work towards completion. MJC said that the soil was wet and support for its equipment was not favorable. Moreover, continuing heavy rain was expected over the next several days. For May 15, 2019, site conditions were wet and poor but some work was accomplished.

No work was performed on May 16 or 17 as appellant was changing out its equipment. (*Id.*) On May 18, 2019, appellant reported weather was coming in, that the wind was too strong and it was not safe to work on tree work above ground. The grounds were also in poor shape. (*Id.*) Some work was performed on May 20, 2019, but the "area was extremely wet." Poor weather conditions prevented any work on May 21, 2019. Some work was performed on May 22, 2019, but it was impacted by wet areas that prevented work in those areas and Mr. Ryan reported that they would be thereafter delayed due to the wet conditions, stating:

> We will reschedule work for what balance of what sections
> to perform work at that may be able to complete work
> activity depending on each areas ability to access correctly
> and safely with new date to be forwarded after
> improvement. (Syntax in original)

(R4, tab 42 at 1-2)

9. As no work had been performed since May 22, 2019, on June 3, 2019, the government inquired of Mr. Ryan as to when they would return to work (R4, tab 43) and he advised that the weather and ground conditions were not conducive and he was waiting for favorable weather and dry out conditions. Moreover, appellant advised that stand-by time would be too costly for continued performance. (R4, tab 44) More particularly, he stated:

> When conditions are unfavorable it is not cost effective for
> the government in mobilization and demobilization
> charges that become continual and repeated to proceed to
> site and not be able to perform work. Please take note for
> your file as our return conditions are viewed and scheduled
> accordingly to productivity and ability to perform SOW at
> your project with additional unnecessary concerns.

(R4, tab 44 at 1)

10. On June 4, 2019, the contracting officer emailed appellant, stating:

> The government understands that there has been an
> unusual amount of rain and appreciate your reports. The
> mission partners really need this work finished as to not
> impact their business during peak season. Your contract
> still has a few weeks remaining and any assistance you can
> provide to expedite the completion would be greatly

5

appreciated. Please let SSgt Tucker and myself know if we can be of any assistance.

(R4, tab 48 at 2) Appellant replied that same date stating that it could perform the required work at the golf course but that it would cost the government additional money in order to resume performance in the existing weather conditions. Such performance would utilize extensive hand work in addition to using mats to support any required equipment. Appellant also stated that it would require an additional mobilization payment to cover amounts over and above its bid amount. (R4, tab 48 at 1-2)

11. On June 5, 2019, the golf course manager expressed his concern to other government officials with the progress of the contract work, stating that no portion of the work was 100% complete and the entire job was only 30% to 35% complete. Thus he was resistant to paying appellant's latest invoice for $4,200 which would have made the total paid under the contract to be $13,355 out of the total contract amount, about $23,000, or more than 50% paid on a job that was only 30% to 35% complete. (R4, tab 47 at 1-2) Consequently, appellant's invoice was rejected (R4, tab 51 at 1-2).

12. On June 5, 2019, appellant rejected the government's invitation of that same date to jointly walk the site so as to assess the work remaining to be performed, stating:

> We are familiar with the project and know what still needs to be completed and we have no reservation or additional question with the work to be performed and we completely understand the project. . . . We just feel that a walk through at this time is premature and is not productive for either party unless you want to extend further costs.

(R4, tab 49 at 1)

13. On June 7, 2019, appellant submitted a proposal for the additional costs for accomplishing the uncompleted contract work in the total amount of $8,423.05, including overhead and profit (R4, tab 50 at 2-3).

14. Appellant was not on the site on June 10, 2019, having been absent since May 22, 2019 (R4, tab 52). When asked by the Course Manager whether appellant planned to work on June 10, 2019, he was told that rain over the weekend had caused conditions to not dry out. In fact, the Course Manager noted for the record that the conditions were ideal for work and had been for about three weeks. (*Id.*)

15. On June 12, 2019, representatives of the government and Molly Jessie had a telephone conversation in which the government contended only 38% of the work

was complete and appellant contended that 58% of the work was complete and the grounds were too wet to support safe working conditions (R4, tab 55). When asked if appellant would be able to finish by June 30, 2019, Mr. Ryan stated he did not know if the weather will hold and he had not yet rented the required equipment (*Id.*)

16. On the evening of June 12, 2019, Mr. Ryan sent a lengthy email to government officials clarifying MJC's position on work stoppage and posing a series of questions to the contracting officer. He further stated that unless MJC was paid to remain on standby to perform work as allowed by the weather then appellant was entitled to additional mobilization and demobilization each time appellant mobilized and demobilized to perform work. Appellant concluded by stating that the government might want to consider terminating the contract for convenience to avoid continued extensions and an unhappy customer. (R4, tab 54 at 1-3)

17. On June 18, 2019, the contracting officer issued a cure notice to appellant, advising that the government considered MJC's failure to make progress a condition that was endangering performance of the contract and that if the conditions were not cured within 10 days after receipt of the notice the government may terminate the contract for cause under General Provision Paragraph 13(a) (2), Termination for Cause, of the contract (R4, tab 57 at 2). The notice further stated:

> 2. Your request for termination for convenience in your email dated 12 June 2019 indicated a decision on your part to leave the work incomplete. You are hereby given the opportunity to complete all work by 30 June 2019, in accordance with the terms and conditions of the contract, as modified.
>
> 3. You are directed to take the following actions as a result of this notice:
>
> a. Within 10 days, indicate if the intent of Molly Jessie Co. is to not complete all work in accordance with the terms and the conditions of the contract.
>
> Or
>
> b. Demonstrate significant progress on all remaining work in accordance with the terms and the conditions of

7

the contract to ensure a 30 June 2019 completion date.

(*Id.*)

18. Later in the day on June 18, 2019, appellant submitted a response to the cure notice, stating that it was not requesting a termination for convenience, rather it was proposing that such convenience termination might be the best solution if the government did not agree to appellant's alternative proposals for accomplishing the work, all of which required the payment of additional money (R4, tab 59 at 2). That email further recapped appellant's view of what had transpired during the contract period, including that the contracting officer had not responded to several questions posed in an earlier email from appellant (R4, tab 59 at 2-9).

19. On June 19, 2019, the contracting officer notified appellant that the cure notice was intended to be his response to those questions, but he nevertheless provided brief answers to those questions (R4, tab 60 at 2-8). Appellant commented on the responses in the evening of June 19, 2019 (R4, tab 60 at 1, 3-8).

20. The contracting officer advised MJC on June 20, 2019 that "[t]he Government will not continue a point by point discussion as to why the work is not complete. Please provide a response to the cure notice issued 18 June." (R4, tab 62 at 1)

21. Appellant responded that same day in a second response to the cure notice, stating:

> FYI, we had no intention of not completing this project.
> We have done work there in the past with no issues. Your
> way of handling this contract recently by ignoring the past
> agreements, makes it impossible to proceed.

(*Id.*)

22. On June 21, 2019, the contracting officer notified MJC as follows:

> The response required by the cure notice is: 1) provide
> notice that Molly Jessie Co will not perform the work in
> accordance with the terms and conditions of the contract or
> 2) demonstrate significant [progress] on all remaining
> work in accordance with the terms and the conditions of
> the contract to ensure a 10 [sic 30] June 2019 completion
> date.

8

> Other suggestions as to how the Government should fulfill
> the requirement are not a valid response.

(*Id.*)

23. Appellant responded by stating that it was willing to perform so long as the contract was modified as it had suggested by extending the contract completion date and by approving additional payments for alternative means of accomplishing the work. If the contracting officer denied the requested modifications then appellant suggested the contracting officer should issue a final decision that it could appeal to the Armed Services Board of Contract Appeals. (R4, tab 63 at 1)

24. On June 25 and 26, 2019 appellant provided additional responses, much of it repetitious of previous responses, but also requesting that any modification to the contract include mobilization costs and an offer to reduce the amount sought in its third invoice from $4,200 to $3,000 (R4, tab 64 at 1). On June 28, 2019, appellant repeated its suggestion that the government terminate for convenience (R4, tab 65 at 1)

25. Later on June 28, 2019, the contracting officer issued a final decision terminating the contract for cause under General Provision Paragraph 13, stating that appellant "failed to demonstrate significant progress on the remaining work in accordance with the terms and conditions of the contract to ensure a completion date of 30 June 2019" (R4, tab 67).

26. The final decision was timely appealed to this Board on July 15, 2019 and was docketed as ASBCA No. 62134.

## DECISION

"[A] default termination is a drastic sanction which should be imposed (or sustained) only for good grounds and on solid evidence." *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 765 (Fed. Cir. 1987) (quoting *J.D. Hedin Constr. Co. v. United States*, 408 F.2d 424, 431 (Ct. Cl. 1969)). Though this is an appeal brought by Molly Jessie Company, because a termination for default is essentially a government claim, the government bears the burden of proving, "by a preponderance of the evidence, that a termination for default was justified." *DayDanyon Corp.*, ASBCA No. 57681, 15-1 BCA ¶ 36,073 at 176,151; *Keystone Capital Services*, ASBCA No. 56565, 09-1 BCA ¶ 34,130 at 168,753 (citing *Lisbon Contractors*, 828 F.2d at 765. If the government establishes a prima facie case justifying the termination, the burden shifts to the contractor to prove the default was excusable." *Truckla Services, Inc.*, ASBCA No. 57564, 17-1 BCA ¶ 36,638 at 178,445 (citing *ADT Constr. Grp., Inc.*, ASBCA No. 55358, 13 BCA ¶ 35,307 at 173,312.

9

The government terminated the contract on June 28, 2019 for failing to make progress so as to complete the work by June 30, 2019. Whether we use the government's estimate of the amount of work completed, 38% as of June 12, 2019, or appellant's estimate on that same date, 58% (SOF ¶ 15), it is clear that a significant amount of work remained and appellant was unwilling to complete performance unless it was given more money. (SOF ¶¶ 10, 18) Our review of the contract revealed no clause which required the government to increase the price on this firm fixed price contract. Therefore we find the government has established a prima facie case justifying the termination for cause.

The burden then shifts to MJC to prove the default was excusable. Mostly appellant's Rule 11 brief talks about how difficult it was to work on the site and that to perform the work it had agreed to perform and at a price it had agreed to for such work was not possible. The record is clear that the site had days when the ground was wet. But it was not always wet. (SOF ¶ 14) Appellant performed no work subsequent to May 22, 2019, and frankly we are not convinced on this evidence that it could not work on many of those days prior to termination, it was just too costly to perform and that is not the fault of the government.

We find nothing in appellant's evidence or its arguments that proves the default was excusable, and thus we find the termination for cause to be appropriate.

## CONCLUSION

The appeal is denied.

Dated: February 5, 2020

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

(Signatures continued)

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62134, Appeal of Molly Jessie Company, rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

11